T. J. MACKAY ET AL. v. STATE OF NEBRASKA.

FILED APRIL 18, 1900. No. 11,137.

Connempt: DISAVOWAL: EXTENUATION. A disavowal by contemnor of intention to commit a contempt of court, when made in good faith, though insufficient to purge the contempt, is, at least, receivable in extenuation of the offense.

ERROR to the district court for Douglas county. Tried below before SCOTT, J. *Reversed.*

*McGilton & Herring, A. W. Jefferis* and *James H. McIntosh,* for plaintiffs in error:

Presumptions and intendments will not be indulged in

a contempt case to sustain a judgment of conviction. *Hawes v. State*, 46 Nebr., 149; *Cooley v. State*, 46 Nebr., 603; *Beckett v. State*, 49 Nebr., 210.

The averments of the answer must be accepted as conclusive, and they completely exculpate the defendants. Such was the rule laid down in the *Percival Case*, and followed in subsequent cases. *Percival v. State*, 45 Nebr., 741; *Rosewater v. State*, 47 Nebr., 630. Such is the rule everywhere. *People v. Few*, 2 Johns. [N. Y.], 290; *Ex parte Biggs*, 64 N. Car., 202; *Wells v. Commonwealth*, 21 Gratt. [Va.], 500; *In re Walker*, 82 N. Car., 95; *Wilson v. State*, 57 Ind., 71; *In re May*, 1 Fed. Rep., 737.

Intent is a question of fact, which may be averred as a fact and proven as a fact. If there was no intentional interference with the court there was no contempt of court under the charge. *In re Moore*, 63 N. Car., 397; *Weeks v. Smith*, 3 Abb. Pr. [N. Y.], 211; *In re Woolley*, 74 Ky., 95; *Des Moines Street Ry. Co. v. Des Moines Street R. Co.*, 74 Ia., 585; *Morss v. Sewing Machine Co.*, 38 Fed. Rep., 482.

No appearance *contra*.

NORVAL, C. J.

In 1899 there was pending in the district court of Douglas county a case entitled, "In the matter of the application of Benjamin F. Dodd and Annie E. Dodd for a writ of habeas corpus on behalf of Clara Blain Dodd, Minnie Fay Dodd, Rosa Allen Dodd and Marvel Dodd, minor children of the petitioners." Of its nature we have no judicial knowledge, as the record before us is entirely silent in that respect. While said case was pending and undetermined in said court, T. J. Mackay, W. P. Harford and Hurbert C. Herring joined in writing, signing and transmitting to the Hon. Cunningham R. Scott, judge of said court before whom said case was pending, the following letter:

"*To the Hon. Cunningham R. Scott*—DEAR SIR: We, members of the executive board of the Nebraska Chil-

dren's Home Society, respectfully desire to present for your careful consideration the following facts in the case of the Dodd children, now in your hands for settlement.

"We are personally acquainted with the case from the beginning, and beg you to understand that in trying to retain these children our society is actuated solely by their solicitude for the future of the same. At the time when the parents of these children asked our society to provide for them, the family were in most destitute circumstances and dependent upon their neighbors for support, the father having made application to be admitted to the Soldiers' Home, thus throwing wife and children upon the charity of the public or the care of the county officials. We heard all the testimony in the case when the parents first made their appeal to have their children returned to them, and that testimony confirmed us in the belief that the parents were not only unable to provide for their large family, but unworthy as well, the main motive of their desire to regain their daughters being that they might go around the streets and saloons with their older deformed sister, to collect pennies and nickels from sympathetic people; thus enabling their parents to live in idleness. The dangers to which these girls, now pure and innocent, will be thus exposed, must become apparent at once to you, and if you can give the matter your personal attention, you will discover that these parents are now unable to support even themselves, and that by restoring these children to said parents, you are dragging them away against their will from comfortable loving homes to a wretched hovel where are no comforts and where these girls will have every incentive to wrong living, and no help towards a life of purity and respectability."

A complaint against said Mackay; Harford and Herring was filed in said district court, which alleged that in writing and transmitting said letter they intended to unduly influence said judge in his determination of the issues in the case pending before him, and to hinder the

due administration of justice; further, that certain of the statements made in said letter were false and malicious, without foundation in fact, and made for the purpose of deceiving said judge, and that the senders thereof must have known that certain of said statements were untrue, and were guilty of contempt in writing and transmitting the same as aforesaid.

The writers of the letter appeared and filed their answer to the complaint. It contained, among others, the following language:

"These defendants admit that they wrote and sent to Cunningham R. Scott the letter described in said complaint; and aver that by doing so these defendants did not know nor suspect that they might thereby be guilty of any contempt of court, nor did they intend any contempt of court thereby. On the contrary, these defendants, in writing and sending said letter, were actuated solely and exclusively by motives of kindliness and Christian charity for said children. They believed that said letter would encourage and promote a full judicial investigation of all the facts in respect to the relations of said society to said children; and aver that by said letter these defendants had no thought of attempting, and did not attempt to hinder the due administration of justice in the matter described in said complaint as pending before said court." These statements, with others, except the words "These defendants admit they wrote and sent to Cunningham R. Scott the letter described in said complaint," were, on motion, stricken from the answer, and error is predicated on this ruling of the court, the accused having been adjudged guilty of contempt. We are persuaded that error was committed in striking from the answer the allegation quoted. The rule in cases of constructive contempt is, if language alleged to be contemptuous is capable of an innocent construction, courts are bound to adopt that interpretation. *Percival v. State,* 45 Nebr., 741; *Rosewater v. State,* 47 Nebr., 630. In certain cases, one charged with contempt of court may purge

himself thereof by his answer given under oath.  7 Am. &
Eng. Ency. Law [2d ed.], 74.  The disavowal of the de-
fendants of any intent on their part to hinder the admin-
istration of justice in said court, or to unduly influence
it, if it did not purge them of contempt, at least was
permissible in extenuation of the offense.  7 Am. & Eng.
Ency. Law [2d ed.], 75 and cases there cited.  The allega-
tions of the answer above quoted, therefore, if they did
not have the effect to purge the defendants of contempt,
must be regarded, if true, as in some degree  palliating
the offense, if any was committed in writing and trans-
mitting the letter in question.  It was error to strike these
allegations from the answer, and for this reason the sen-
tence is reversed and the cause remanded.  Other excep-
tions taken in the petition in error and urged in the brief
are not decided.

REVERSED AND REMANDED.